CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

JEFFREY A. BACKHUS (CABN 200177)
Assistant United States Attorney

    60 South Market Street, Suite 1200
    San Jose, California 95113
    Telephone: (408) 535-5080
    FAX: (408) 535-5066
    jeffrey.backhus@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 24-433 PCP |
| Plaintiff, | GOVERNMENT'S SENTENCING MEMORANDUM |
| v. | |
| LOUIE TIJERINA, | Sentencing Date: August 13, 2025<br>Time: 10:00 a.m. |
| Defendant. | |

## I. INTRODUCTION

The government believes that the defendant, Louie Tijerina, is an ongoing threat to public safety because of his conduct in the instant case as well as his history of violence and weapons possession. Here, Tijerina pleaded guilty to being a felon in possession of ammunition — specifically, possessing a firearm containing a magazine loaded with seven rounds of 9mm Winchester ammunition. However, this case is just the latest in a long line of disturbing conduct. Tijerina's criminal history includes a 2010 felony conviction for assault with a deadly weapon, a 2012 misdemeanor conviction for fight/challenge in a public place, a 2015 misdemeanor conviction for battery, a 2017 misdemeanor conviction for terrorist threats, a 2017 felony conviction for felon in possession of a firearm, a 2018 conviction for

carrying a concealed dirk or dagger, a 2018 conviction for assault by a prisoner, and a 2022 felony conviction for felon in possession of a firearm. Based on this criminal history and the aggravating facts of this case, the government believes that a significant sentence is appropriate.

In the Presentence Report ("PSR"), Probation calculates an advisory sentencing range of 51-63 months and recommends a downward variance to 42 months. PSR at ¶ 88; PSR Recommendation at 1. However, in his sentencing brief, the defendant argues that his total offense level should be 10, with a resulting Guidelines range of 24-30 months. Def. Sentencing Memo at p. 1. The defendant bases this calculation on arguments in the now vacated opinion in *United States v. Gomez*, 115 F.4th 987, 992-95 (9th Cir. 2024), *reh'g en banc granted, opinion vacated*, No. 23-435, 2025 WL 1100780 (9th Cir. Apr. 14, 2025).[1] Prior to *Gomez*, however, the Ninth Circuit long held that a violation of California Penal Code Section 245(a)(1) is categorically a "crime of violence." This reasoning is consistent, and not irreconcilable, with the Ninth circuit's decision in *Borden v. United States*, 593 U.S. 420, 424-25 (2021), which held that that a "crime of violence" requires a *mens rea* of more than recklessness. Based on its assessment of the California Supreme Court's interpretation of § 245(a)(1), the Ninth Circuit's precedent holds uniformly that, under California law, an assault under § 245(a)(1) "requires an intent to commit a battery" and cannot be committed with a *mens rea* of mere negligence or recklessness. Accordingly, the defendant's prior § 245(a)(1) assault conviction was a "crime of violence," and Probation's Guidelines calculations are correct. For the reasons stated herein, the government does not see any reason to depart from the appropriate Guidelines range and therefore recommends a sentence of 51 months to be followed by a three-year period of supervised release on the terms recommended by Probation

II.   **FACTS**

A.   **Summary of Charged Conduct**

On June 13, 2024, at approximately 3:52 a.m., Santa Clara Police Department ("SCPD") officers were dispatched to the Driftwood Motel in Santa Clara, in response to a report of a man brandishing a gun. SCPD dispatch advised the responding officers that the original reporting person stated that the

---

[1] The government believes that the Ninth Circuit will be considering *Gomez en banc* the week of September 8, 2025. The question being considered *en banc* is whether there is a pure issue of law exception to the plain error standard of review.

GOV'T SENTENCING MEM.                    2
CR 24-433 PCP

male had been dressed in black clothing and wore a hat that had the word "Salinas" on it.

SCPD officers parked near the southeast corner of the hotel and got out of their vehicles. SCPD dispatch advised that they spoke to the hotel clerk who had seen a male adult walking in the parking lot wearing clothes like those worn by the man who had reportedly brandished the firearm. In addition, the original reporting party, who refused to identify himself, told dispatch that the suspect had been showing a gun to people at the hotel.

As the officers were receiving the information from dispatch, that another officer advised that a male matching the description was walking southbound through the parking lot. An officer moved in a western direction and saw a male, later identified as Tijerina, standing behind a pillar in front of room #101. Tijerina was dressed in all black with white shoes and a black backwards hat.

An officer announced the police presence and began to approach Tijerina. Tijerina immediately pointed to the northwest corner of the motel and stated that there was an argument going on in that direction. The officer believed that Tijerina was trying to divert attention away from himself by directing the officer elsewhere.

As Tijerina turned towards the officer, the officer saw that Tijerina was wearing a distinct black hat with the word "Salinas" on it in white script lettering. Tijerina was wearing baggy pants, but the officer could see bulges in his front pants pockets. The officer asked Tijerina if he had any weapons on him. Tijerina said he did not. The officer asked Tijerina if he could pat him down for weapons, and Tijerina refused, saying that the officer should not "break the law." Based on the call for service involving the brandishing of a firearm, Tijerina matching the description of the reported perpetrator, and the bulges in Tijerina's pockets, the officer determined that a pat down of Tijerina's outer clothing was necessary for the officers' safety and the safety of innocent bystanders. Tijerina again refused a pat down and began to back away from the officers. After a struggle, it took several officers to gain control of Tijerina and placed him in handcuffs. Once Tijerina was in handcuffs, one of the officers felt Tijerina's right front pants pocket and stated that there was a gun in it. Another officer put plastic gloves on and also felt the outside of Tijerina's pocket. He could clearly feel the outline of a semiautomatic pistol. The officer reached into Tijerina's pocket and removed the pistol. The pistol turned out to be a privately manufactured firearm with a Springfield Armory slide and barrel and a 3-D

printed pistol frame. The pistol was loaded with seven rounds of Winchester 9mm ammunition. Officers booked the firearm, ammunition, and "Salinas" hat into evidence and took Tijerina into custody.

## III.    DISCUSSION

### A.    Sentencing Guidelines

The government's Guidelines calculations are as follows:

| | |
|---|---|
| Base Offense Level, U.S.S.G. 2K2.1(a)(4)(A) | 20 |
| Acceptance of Responsibility, § 3E1.1 | -3 |
| Total Offense Level | 17 |
| Criminal History Category (0 points) | VI |
| Total Range (in months) | 51-63 months |

As stated above, the defense argues that Tijerina's 2010 felony conviction for assault with a deadly weapon does not qualify as a crime of violence, so his total offense level should be 10, with a resulting Guidelines range of 24-30 months. Def. Sentencing Memo at p. 1. The defendant's argument is wrong. Now that *Gomez* has been vacated, the question of whether assault with a deadly weapon is a crime of violence is once again controlled by established Ninth Circuit precedent, including *United States v. Grajeda*, 581 F.3d 1186, 1193–96 (9th Cir. 2009), and *United States v. Heron-Salinas*, 566 F.3d 898, 899 (9th Cir. 2009) (*per curiam*), which held that *the mens* rea for California assault requires more than mere recklessness, and therefore satisfies *Borden*.

### B.    Binding Precedent Holds That an Assault Under § 245(a)(1) Is a Crime of Violence

"To determine whether a felony is a 'crime of violence,' [the courts] apply the categorical approach" established by *Taylor v. United States*, 495 U.S. 575 (1990); *United States v. Castro*, 71 F.4th 735, 738 (9th Cir. 2023). Under *Taylor*, the courts "begin by analyzing the state statute's text," and then, without regard to the defendant's actual conduct, consider "whether the prior felony's elements cover conduct that 'sweeps more broadly than the conduct covered by § 4B1.2(a)'s crime-of-violence definitions.'" *Id*. "If so, then the prior felony is not categorically a 'crime of violence.'" and cannot to increase the defendant's offense level. *See id*.

Section 245(a)(1) of the California Penal Code provides that an "assault upon the person of

another with a deadly weapon or instrument other than a firearm" is a felony punishable by over one year in state prison. Cal. Pen. Code § 245(a)(1). For purposes of § 245 and other California assault statutes, "[a]n assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." Cal. Pen. Code § 240. A "deadly weapon or instrument" is "any object used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." *People v. Aguilar*, 16 Cal. 4th 1023, 1028-29 (1997).

Under *Taylor's* categorical approach, the Ninth Circuit has considered assault convictions under § 245(a)(1) and other subsections of that statute and, prior to the now vacated *Gomez*, has held — uniformly, in multiple published decisions — that the assault crimes defined in that statute categorically qualify as "crimes of violence" under the Guidelines and in various other statutes.

For example, in *United States v. Heron-Salinas*, 566 F.3d 898 (9th Cir. 2009) (per curiam), the Ninth Circuit held that assault with a firearm under California Penal Code § 245(a)(2) is categorically a "crime of violence" under 18 U.S.C. § 16(a). *Id*. at 899. There, the defendant argued that "§ 245 does not contain the requisite *mens rea* . . . to qualify as a crime of violence under . . . ." *Id*. In rejecting that argument, the Ninth Circuit held that, "[u]nder a plain reading of [§ 245], the elements of assault with a firearm — an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another with a firearm — satisfy the requirements of section[s] 16(a) and (b)." *Id*. (citing Penal Code §§ 240 and 245 for the elements of assault). As to *mens rea*, the Ninth Circuit explained that, "[i]n California, assault 'requires an *intentional act* and *actual knowledge* of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another.'" *Id*. (citing *People v. Williams*, 26 Cal. 4th 779, 790 (2001) (emphasis added)). Moreover, "[a]ttempting to commit a violent injury on another person with a firearm 'naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense.'" *Id*. (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 10-11 (2004)). Accordingly, the Ninth Circuit concluded that "[t]he *mens rea* requirement is met." *Id*.

Next, in *United States v. Grajeda*, 581 F.3d 1186 (9th Cir. 2009), the Ninth Circuit held that a conviction under Penal Code § 245(a)(1) — assault with a deadly weapon or, as then codified, assault by means likely to produce great bodily injury — is categorically a "crime of violence" under former

U.S.S.G. § 2L1.2. *See* 581 F.3d at 1187, 1190 (citing "elements" clause of USSG § 2L1.2, comment (n.1)(B)(iii) (2006)); *see also* U.S.S.G. § 2L1.2, comment (n.1) (2021). As to the *mens rea* requirement, *Grajeda* considered and rejected the defendant's argument that "section 245(a)(1), as construed by the California courts [(most notably, *People v. Williams*)], does not require proof of sufficiently intentional conduct to qualify as a crime of violence." *Id*. First, *Grajeda* noted that "neither recklessness nor gross negligence is a sufficient *mens rea* to establish that a conviction is for a crime of violence." *Id.* at 1190 (citing *Leocal*, 543 U.S. at 9–11 (negligence is not sufficient), and *Fernandez–Ruiz v. Gonzales*, 466 F.3d 1121, 1130 (9th Cir. 2006) (en banc) (neither negligence nor recklessness is sufficient)). Thus, long before *Borden* was decided in 2021, *Grajeda* analyzed whether assault with a deadly weapon under § 245(a)(1) was a "crime of violence" based on the same *mens rea* standard later enunciated in *Borden* — namely, that recklessness is insufficient.

With that understanding, *Grajeda* then conducted a careful and extensive review of the California case law defining the *mens rea* element for assault with a deadly weapon under § 245(a)(1). *Id*. at 1192–97. The Court noted that "[t]he *mens rea* required for assault under California law has been the subject of a long, tortured, and ongoing set of explanations in the California courts." *Id*. at 1193 (citing *Williams* and other cases). The Court also candidly acknowledged that "some language from state court opinions support[ed] [defendant Grajeda's] assertion" and that "the case law is decidedly mixed." *Id*. at 1192. Nonetheless, based on its assessment of the California Supreme Court's precedent, *Grajeda* rejected the claim that an assault under § 245(a)(1) could be established by proof of mere negligence or recklessness. The Ninth Circuit first quoted the following passage from *People v. Colantuono*, 7 Cal. 4th 206, 218–19 (1994),[2] which, in contrast to *Williams*, clearly explains that § 245(a)(1) requires a *mens rea* of *intent* to commit a violent act that is directed at causing a forceful impact against the person of another, as opposed to a specific consequence (*i.e*., harm) that may flow from the impact:

> The intent to cause any particular injury, to severely injure another, or to injure in the sense of inflicting bodily harm is not necessary. *The pivotal question is whether the defendant intended to commit an act likely to result in such physical force, not whether he or she intended a specific*

---

[2] *Colantuono* was superseded by statute as to an unrelated issue regarding potential penalties, as noted in *People v. Conley*, 63 Cal. 4th 646, 660 n.4 (2016), but it remains good law.

GOV'T SENTENCING MEM.                                6
CR 24-433 PCP

> *harm*. Because the nature of the assaultive conduct itself contemplates physical force or "injury," a general intent to attempt to commit the violence is sufficient to establish the crime.

*See Grajeda*, 581 F.3d at 1193 (emphasis added) (quoting *Colantuono*, 7 Cal. 4th at 218–19). As *Grajeda* further noted, *Colantuono* "[e]mphasiz[ed] that the unlawful *consequences* of an assault need not be specifically intended," but rather "the necessary mental state is 'an *intent* merely *to do a violent act*.'" *Id*. at 1194 (quoting *Colantuono*, 7 Cal. 4th at 218–19).

As to *Williams*, the Ninth Circuit cited a passage in which the California Supreme Court acknowledges that "[b]ecause assault criminalizes conduct based on what might have happened … and the mental state for assault incorporates the language of probability, *i.e.*, direct, natural, and probable consequences," the language "*arguably implies* an objective mental state consistent with a negligence standard." *See Grajeda*, 581 F.3d at 1194 (citing *Williams*, 26 Cal. 4th at 787) (emphasis added). As the Ninth Circuit recognized, however, *Williams* clearly states that assault under California law is "a general intent crime" and "mere recklessness or criminal negligence is still not enough because a jury cannot find a defendant guilty of assault based on facts he should have known but did not know." *Id. at 1194 (*citing *Williams*, 26 Cal. 4th at 788 (explaining that it was *"adopting [a] knowledge requirement"*)). Based on this analysis, *Grajeda* concluded that an assault with a deadly weapon under Penal Code § 245(a)(1) "requires proof of sufficiently intentional conduct to satisfy the *mens rea* requirement for a 'crime of violence'. . .." *Id*. at 1197.

Moreover, apart from the now vacated *Gomez*, the Ninth Circuit has constantly reaffirmed this precedent since *Borden*. Since *Borden* was decided, the Ninth circuit has repeatedly held that that *Borden*, 141 S. Ct. 1817, did not abrogate the Circuit's established line of precedent holding that an assault under § 245(a)(1) is categorically a "crime of violence" because § 245(a)(1) requires a *mens rea* greater than recklessness. *See, e.g., United States v. Man*, 2022 WL 17260489, at *1 (9th Cir. 2022) (noting that "[w]e have repeatedly held that assaults under sections 245(a)(1) and 245(a)(2) . . . are categorically 'crimes of violence,' and rejecting defendant's claim that *Borden* abrogated this precedent); *United States v. Morton*, 2022 WL 17076203, at *1 (9th Cir. 2022) (same); *United States v. Sanchez*, 2021 WL 5985019, at *1 (9th Cir. 2021) (same); *see also Paz-Negrete v. Garland*, 2023 WL 4404348, at *1 (9th Cir. 2023) (holding that a § 245(a)(1) conviction for assault with a deadly weapon is

a "crime of violence" and thus an "aggravated felony" that subjected the petitioner to deportation; citing *Borden* without any indication that *Borden* was in conflict with Ninth Circuit precedent).

In sum, established Ninth Circuit precedent holds that assault with a deadly weapon under Penal Code § 245(a) is a crime of violence. Accordingly, the Guidelines calculations set forth by Probation and the government are correct.

### C. A 51-Month Sentence is the Reasonable and Appropriate Sentence in this Case

The government respectfully requests that the Court impose a sentence of 51 months of imprisonment. This sentence is supported by the § 3553(a) factors: in particular, the history and characteristics of the defendant, promoting respect for the law, the seriousness of the offense, deterring future criminal conduct, and protecting the public. Moreover, given the aggravating nature of the offense, as well as various 3553(a) factors, the government believes that a 51-month sentence is appropriate regardless of whether the court sides with the defendant in discounting assault under Penal Code § 245(a)(1) as a crime of violence

The circumstances of the instant offense, as well as Tijerina's history and characteristics are extremely aggravating. In this case, Tijerina was charged with being a felon in possession of ammunition. However, this is not a typical felon in possession case where the defendant was pulled over for a vehicle code violation and a gun was recovered under his seat. Here, officers responded to a motel after a witness reported a man, Tijerina, brandishing a firearm. When officers arrived, it took several of them to subdue Tijerina as he resisted in order to recover the loaded weapon. This is violent and aggravating conduct.

Unfortunately, this incident is only part of a disturbing pattern of violent conduct involving weapons. As stated above Tijerina has convictions for assault with a deadly weapon fight/challenge in a public place, battery, terrorist threats, felon in possession of a firearm, carrying a concealed dirk or dagger, assault by a prisoner, and felon in possession of a firearm. Tijerina's criminal history spans much of his life, with his first conviction at age 20. Admittedly, the longest sentence Tijerina has received is three years in prison in 2022. However, that sentence did nothing to discourage him from committing future crimes. Tijerina was released from prison in February 2024 and was arrested for the instant offense just four months later. If the three-year sentence did not have any effect on the

defendant, it is difficult to envision the 18-month sentence recommended by the defense will have any impact. Given his criminal history and aggravating nature of both this offense and the subsequent shooting, the government believes that a significant increase in punishment is appropriate.

At the same time, the government recognizes Tijerina's history of substance abuse and instability in his life at the time he committed this offense. However, any mitigation is overcome by his extensive criminal background, the nature of the instant offenses and the danger he poses to the community.

## IV.  CONCLUSION

Given Tijerina's criminal history and ongoing violent behavior, the government believes that a 51-month sentence is appropriate. It reflects the seriousness of defendant's conduct, his criminal history, and the need to protect the public. It will also provide, the government hopes, a level of specific deterrence for the defendant that his previous sentences have not. Accordingly, the government recommends a sentence of 51 months of imprisonment followed by a three-year period of supervised release on the terms recommended by Probation.

DATED: August 8, 2025                                       Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney


/s/
JEFFREY A. BACKHUS
Assistant United States Attorney